

## UNITED STATES BANKRUPTCY COURT
### DISTRICT OF NEW JERSEY
### U.S. COURTHOUSE
### 402 E. STATE STREET
### TRENTON, NEW JERSEY 08608

**Hon. Michael B. Kaplan**                                             609-858-9360
**Chief Judge, United States Bankruptcy Court**

February 21, 2023

Shmuel Klein, Esq.
Law Office of Shmuel Klein, PA
316 Prospect Ave, Ste 3j
Hackensack, NJ 07601
*Counsel for Debtor*

Brian E. Caine, Esq.
Parker McCay P.A.
9000 Midlantic Drive, Ste 300
P.O. Box 5054
Mt. Laurel, NJ 08054
*Counsel for MTGLQ Investors, LP*

Albert Russo, Esq.
Erik Collazo, Esq.
David Martin, Esq.
*Standing Chapter 13 Trustee*
CN 4853
Trenton, NJ 08650-4853

                Re:    <u>In re Bishawjit Saha</u>
                       Case No.: 22-15419

Dear Counsel,

      Presently before the Court are two matters. The first is the secured lender's, MTGLQ Investors, LP ("MTGLQ"), Motion for Relief From Stay (ECF No. 29), and the Debtor's

opposition. (ECF Nos. 32, 33, and 34). The second is the Debtor's Motion to Modify Claims and Object to Claims of MTGLQ (ECF No. 30), MTGLQ's Opposition (ECF No. 31), and MTGLQ's Supplemental Opposition (ECF No. 38). The Court has jurisdiction over this proceeding in accordance with 28 U.S.C. §§ 157(b)(2) and 1334. For the reasons stated herein, the Motion for Relief From Stay is granted and the Motion to Modify Claims and Object to Claims of MTGLQ is denied.

## I.  Background

By way of background, Bishawjit Saha ("Debtor") filed this chapter 13 bankruptcy on July 5, 2022 ("Petition Date") and, as of the date of this Opinion, the Debtor has not confirmed a plan of reorganization.[1, 2] The Motion for Relief of Stay and the Motion to Modify Claims and Object to Claims of MTGLQ involve the Debtor's real property located at 1 Broad Avenue, Edison, New Jersey 08820 ("Property"). The parties disagree as to the value of this Property. Debtor contends it is worth approximately $380,000 and MTGLQ argues it is worth approximately $575,800. *See Certification In Support Of Motion To Reclassify Claims and Object to Claims of MTGL* ECF No. 30-1; *Certification In Support of Motion for Relief From Automatic Stay* ECF No. 29-1. At this time, this Court need not resolve valuation to decide the pending motions.

---

[1] The Court notes MTGLQ queries why the Debtor filed this bankruptcy case in New Jersey even though the Debtor had two previous filings in the Eastern District of New York. *Objection to Confirmation* 4, ECF No. 23. At this time, a Motion For Change of Venue has not been filed and the Court need not address venue to resolve the pending motions.

[2] A confirmation hearing is scheduled on February 22, 2023. MTGLQ objects to the Debtor's plan on the basis that as of the Petition Date the Debtor's mortgage payments were in default for approximately 13 years totaling $564,119.58. *Objection to Confirmation*, ECF No. 23. MTGLQ argues the Debtor's "plan is <u>ambiguous</u>, <u>not feasible</u> and <u>impermissible</u>." *Id.*

## A. The Property

The Debtor purchased this Property on or about March 5, 2007, by executing a mortgage agreement in the amount of $380,800.[3] As part of the mortgage application the Debtor checked a box indicating he was using this Property as his primary residence. *Supplemental Opposition to Debtor's Motion to Modify Claims and Object to Claims of MTGLQ* 5, ECF No. 38. This transaction was "[r]ecorded on March 15, 2007, in the Middlesex County in Book 12337, Page 0034." *Certification in Support of Motion for Relief From the Automatic Stay*, ECF No. 29-1.

Thereafter, a foreclosure action was commenced against the Debtor and his wife in the Superior Court of New Jersey, Chancery Division, Middlesex County (Docket No.:F-033562-15) in connection with this Property. On December 4, 2020, a final judgment of foreclosure was entered in the in favor of MTGLQ and against the Debtor and his wife in the amount of $778,493.86. *Exhibit A*, ECF No. 38-1.

## B. 341 Hearing

At the 341 hearing, the Debtor made various statements indicating that this Property was no longer his primary residence. Specifically, the Debtor testified that he used the Property as his primary residence until he moved to New York in 2013. *Supplemental Opposition to Debtor's Motion to Modify Claims and Object to Claims of MTGLQ* 2, ECF No. 38. Additionally, the Debtor testified that from time to time the Debtor used this Property as a vacation home but also rented the Property to tenants. *Id.* He also testified that he lives and works in New York and holds a New York driver's license. *Id.* The Debtor further testified that his primary residence is a property that he owns in New York, and he holds a mortgage on that property. *Id.* As for additional bankruptcy

---

[3] A copy of this mortgage agreement and the note were attached as an Exhibit to the Motion for Relief from Stay (ECF No. 29-2).

filings, the Debtor testified at the 341 hearing that he filed two prior bankruptcy cases in the Eastern District of New York. *Id.*

### C. Debtor's Chapter 13 Plan

In this bankruptcy case MTGLQ filed a proof of a secured claim, Claim 3-1, in the amount of $873,669.18 ("MTGLQ's Claim").[4] Debtor's Chapter 13 Plan (ECF No. 2) proposes to make monthly payments of $800 and reclassify part of MTGLQ's Claim as unsecured. MTQLQ argues "the Debtor's Schedule J does not support a finding that the Debtor can afford plan payments at $7,000-$9,000 per month to repay [its] claim in full through the plan." *Supplemental Opposition to Debtor's Motion to Modify Claims and Object to Claims of MTGLQ* 3, ECF No. 38.

### D. Motion to Modify Claims and Object to Claims of MTGLQ

On December 2, 2022, Debtor filed a Motion Modify Claim and Object to Claim of MTGLQ, arguing this claim should be bifurcated into a partially unsecured claim because this Property is not the Debtor's primary residence. Debtor claims this Property is worth approximately $380,000. *Id*. With that valuation, the Debtor seeks to have $380,000 of MTGLQ's claim remain secured and reclassify $492,669.18 as unsecured. *Id*. MTGLQ contends the Debtor's own motion reinforces the infeasibility of the Debtor's plan. *Opposition to Debtor's Motion to Modify Claims and Object to Claims of MTGLQ* 1, ECF No. 31. MTGLQ reiterates that the Debtor cannot bifurcate the secured claim as a matter of law and cannot afford the plan payments ($7,000-$8,000 per month) required to repay the secured claim in full through the plan. *Id.*

### E. Motion for Relief From Stay

---

[4] This claim was transferred (ECF No. 39) on January 18, 2023.

On November 30, 2022, MTGLQ filed the Motion For Relief From Stay (ECF No. 29) seeking relief from the automatic stay under 11 U.S.C. § 362 to proceed with the foreclosure action in the New Jersey Superior Court. As of November 22, 2022, the Debtor owed MTGLQ a total of $7,408.08 post-petition. This amount is comprised of three months of the monthly payment of $3,402.02 and $2,797.98 held in suspense. *Certification In Support of Motion for Relief From Automatic Stay*, ECF No. 29. MTGLQ asserts there is no equity in this Property, and it relies on a Zillow.com estimate valuing the Property at $575,800. *Id.* Debtor argues that "cause" does not exist to grant MTGLQ's Motion for Relief From Stay because, in part, "[t]he Debtor accepted and complied with the loss-mitigation program" and MTGLQ is receiving adequate protection. *Memorandum of Law In Opposition to Lift Stay* 2, ECF No. 33-2.

The parties appeared before this Court on January 11, 2023, to present their respective arguments. At the conclusion of the arguments, the Court advised it would render a decision in this matter prior to the next Chapter 13 hearing date, February 8, 2023. Further the Court allowed counsel an opportunity to file additional submissions in connection with these Motions. Thereafter, on January 18, 2023, MTGLQ filed a Supplemental Opposition to Debtor's Motion to Modify Claims and Object to Claims of MTGLQ (ECF No. 38). Since, January 18, 2023 the Debtor has not filed any additional documents in connection with these pending motions. The Court subsequently adjourned the hearing dates to February 22, 2023.

II. **Discussion**

    A. **MTGLQ's Claim is prima facie valid**

In evaluating the validity of a claim, the Court must look to which party has the burden of proof. Pursuant to 11 U.S.C. § 502(a) "a claim or interest, proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest . . . objects." In *Allegheny* the Third Circuit discussed when and how the burden of proof shifts for claims brought under 11 U.S.C. § 502:

> The burden of proof for claims brought in the bankruptcy court under 11 U.S.C.A. § 502(a) rests on different parties at different times. Initially, the claimant must allege facts sufficient to support the claim. If the averments in his filed claim meet this standard of sufficiency, it is "*prima facie*" valid. *In re Holm,* 931 F.2d 620, 623 (9th Cir. 1991) (quoting 3 L. King, *Collier on Bankruptcy* § 502.02, at 502-22 (15th ed. 1991)). In other words, a claim that alleges facts sufficient to support a legal liability to the claimant satisfies the claimant's initial obligation to go forward. The burden of going forward then shifts to the objector to produce evidence sufficient to negate the *prima facie* validity of the filed claim. It is often said that the objector must produce evidence equal in force to the *prima facie* case. *Id.; see In re Windsor Communications Group, Inc.,* 45 B.R. 770, 773 (Bankr.E.D.Pa.1985). In practice, the objector must produce evidence which, if believed, would refute at least one of the allegations that is essential to the claim's legal sufficiency. If the objector produces sufficient evidence to negate one or more of the sworn facts in the proof of claim, the burden reverts to the claimant to prove the validity of the claim by a preponderance of the evidence. *See In re WHET, Inc.,* 33 B.R. 424, 437 (Bankr.D.Mass.1983). The burden of persuasion is always on the claimant. *Holm,* 931 F.2d at 623 (quoting *Collier* § 502.02, at 502-22); *Windsor Communications,* 45 B.R. at 773.

*In re Allegheny Int'l, Inc.*, 954 F.2d 167, 173–74 (3d Cir. 1992)

On August 16, 2022, MTGLQ filed a proof of claim (Claim 3-1)[5] in the amount of $872,669.18. The Debtor likewise values the claim at $872,669.18 and does not otherwise dispute its validity. *Certification in Support of Motion to Reclassify Claim as Partially Unsecured* 2, ECF No. 30. Therefore, this Court can only conclude MTGLQ's claim is valid as to the amount and

---

[5] The Transfer of Claim Other Than For Security (ECF No. 39) filed on January 18, 2023, that was filed in connection with this claim does not affect this Court's rulings herein.

Debtor's liability. Debtor's contest of the claim rests upon his effort to bifurcate same under 11 U.S.C. §§ 506(a) and 1322(b)(2).

### B. Motion to Modify Claims and Object to Claims of MTGLQ

This Court must determine whether the Debtor may reclassify a portion MTGLQ's claim pursuant to 11 U.S.C. §§ 506(a) and 1322(b)(2) given that the Debtor has not used this Property as his primary residence since 2013, and that the mortgage includes certain additional incidental collateral. Ordinarily, a claim that is secured by a lien on property is treated as a secured claim "only to the extent of the value of the property on which the lien is fixed." *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 239, 109 S. Ct. 1026, 103 L.Ed.2d 290 (1989). To the extent that the amount of the claim is greater than the value of the property, it is considered unsecured. 11 U.S.C. § 506(a)(1). "Thus, a claim that is not fully collateralized can be modified, and the creditor said to be 'crammed down' to the value of the collateral." *In re Ferandos*, 402 F.3d 147, 151 (3d Cir. 2005).

#### 1. 11 U.S.C. § 506(a)

"[S]ection 506(a) limits a creditor's secured claim to the value of its collateral." *In re Hammond*, 27 F.3d 52, 55 (3d Cir. 1994). "In the context of a valuation under § 506(a) where the creditor has satisfactorily established the validity and amount of the claim, as is the case here, the party attempting to modify the secured claim, in this instance, the Debtor, bears the initial burden of proof with regard to valuation." *In re Marshall*, 613 B.R. 194, 223 (Bankr. E.D. Pa. 2020) (citing *In re Heritage Highgate, Inc.*, 679 F.3d 132, 140 (3d Cir. 2012)). Here, Debtor asserts that the Property is worth $380,000 and he relies on a document submitted by EXIT Realty Urban Living in support of this valuation. *Exhibit Broker Price Opinion*, ECF No. 30-6. As an initial matter, Debtor's submissions fall short of establishing valuation for purposes of § 506(a).

Regardless, the Court reiterates that it need not decide valuation of the Property to adjudicate this matter. Even assuming—without finding—that Debtor's valuation is accurate; he is unable to confirm a plan without modifying MTGLQ's claim. Under certain circumstances, the Code limits a debtor's ability to modify and bifurcate creditors' claims. *See* 11 U.S.C. § 1322(b)(2). For the reasons that follow, the Court finds that those limiting circumstances are present in this case and Debtor is unable to make such a modification, and therefore has proposed an unconfirmable plan.

### 2. **11 U.S.C. § 1322(b)(2)**

Section 1322(b)(2) of the Bankruptcy Code protects a mortgagee from having its mortgage modified, or "crammed down," in a Chapter 13 bankruptcy proceeding. However, this protection is limited to claims that are "secured *only* by a security interest in real property that is the debtor's principal residence." 11 U.S.C. § 1322(b)(2) (emphasis added). Thus, when determining whether the anti-modification provision of § 1322 applies, a court's "sole concerns are (1) whether the claim is secured only by real property, and (2) whether the real property is the debtor's principal residence." *In re Scarborough*, 461 F.3d 406, 411 (3d Cir. 2006).

#### i. **Principal Residence**

This Court, addressing the latter prong, determines whether this Property is the Debtor's principal residence for purposes of § 1322(b)(2). The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA") defines a "principal residence" as "a residential structure if used as the principal residence by the debtor, including incidental property, without regard to whether that structure is attached to real property." 11 USC § 101(13A); *see also In re Wissel*, 619 B.R. 299, 311 (Bankr. D.N.J. 2020). In determining whether real property constitutes a debtor's "principal residence," the Third Circuit has directed courts to

look to the character of the collateral *at the time of the mortgage transaction*. When a mortgagee takes an interest in real property that includes, by its nature at the time of transaction, income-producing rental property, the mortgage is also secured by property that is not the debtor's principal residence and the claim may be modified in a debtor's later Chapter 13 proceeding.

*Scarborough*, 461 F.3d at 412 (emphasis added); *see also In re Hoffman*, No. 15-10156, 2016 WL 5791406, at *3 (D.N.J. Oct. 3, 2016) ("[W]hen determining whether more than a principal residence is on the property in issue, 'the critical moment is when the creditor takes a security interest in the collateral . . . .'") (quoting *Scarborough*, 461 F.3d at 412). This analysis does not depend on the subjective intent of the parties, but rather on the structure of the loan and the nature of the collateral at the time of the transaction. *See Scarborough*, 461 F.3d at 411. This Court recognizes that, in *Scarborough*, the Third Circuit does not reference the definition of "principal residence" codified under BAPCPA because it took effect after the debtors in *Scarborough* had filed their bankruptcy petition. Nonetheless, nothing about this change negates the critical moment for determination of rights under 11 U.S.C. 1322(b)(2) as articulated in *Scarborough*.

To prevail here, the Debtor must show that the Property was *not* his principal residence when he secured this mortgage. The Court finds that the Debtor is unable to do so. Indeed, Debtor does not contest that when he purchased the Property in 2007, he had completed a Uniform Residential Loan Application indicating that the Property was being used as his primary residence.[6] *Supplemental Opposition to Debtor's Motion to Modify Claims and Object to Claims of MTGLQ* 5, ECF No. 38. The application also specifically asks the Debtor whether he intends to occupy this Property as his primary residence. *Id.* at 6. The Debtor responded to this question by

---

[6] The Uniform Residential Loan Application has a section indicating this "Property will be" with three corresponding boxes: "primary residence," "secondary residence," and "investment." An "X" was placed in the box alongside the "primary residence" indication.

indicating "yes" and placing an "X" in the corresponding box. *Id.* Furthermore, paragraph 6 of the mortgage provides that the Debtor will use this Property as his principal residence for a period of at least one year. *Id.* at 5. It appears that the Debtor complied with this provision as he did not change his primary residence to New York until approximately six years later, in 2013. There is no doubt the Debtor and MTGLQ understood and contractually agreed the Debtor would use this Property as his primary residence for a period of at least one year. Based on these facts, the Court finds that this Property served as the Debtor's principal residence when he secured the mortgage.

### ii. Interest in Collateral that is Not Real Property

Having determined that this Property is the Debtor's principal residence—thus, satisfying the first prong of § 1322(b)(2)—this Court must next consider wither MTGLQ's claim is secured only by real property. The Third Circuit has confirmed that "[f]or the purposes of bankruptcy cases commenced after October 17, 2005, a 'debtor's principal residence' is defined as a 'residential structure, including incidental property, without regard to whether that structure is attached at real property.' " *Scarborough*, 461 F.3d at 412 n.2 (quoting BAPCPA, Pub. L. 109-8, § 306(c) (2005) (codified at 11 U.S.C. § 101(13A))). Incidental property includes without limitation "all easements, rights, appurtenances, [and] fixtures. . . ." 11 U.S.C. § 101(27B)(B).

Here, Debtor argues that the mortgage on this Property is not secured *only* by real property because the security instrument also references

> all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be conveyed by this Security instrument. All of the foregoing is referred to in this Security instrument as the Property.

*Certification In Support of Motion to Reclassify Claim as Partially Unsecured* 1, ECF No. 30. The Court does not agree with Debtor's contention. Rather, this Court looks to the plain meaning of 11

U.S.C. § 101(27B)(B) and finds that the items that Debtor attempts to characterize as additional collateral are in fact "incidental property," which is included in the definition of a "principal residence" under 11 U.S.C. § 101(13A)(A). Therefore, MTGLQ's claim is secured only by this Property and Debtor's argument is without merit. Because both criteria of § 1322(b)(2) are satisfied, the anti-modification protections apply and Debtor's Motion to Modify MTGLQ's Claim is denied.

### C. Motion for Relief From Stay

MTGLQ seeks relief from the automatic stay to pursue its remedies in connection with this Property; however, MTGLQ does not specify the subsection of 11 U.S.C. § 362 under which it seeks such relief. Therefore, this Court adjudicates this Motion for Relief from Stay under 11 U.S.C. § 362(d)(1) and (2).

The automatic stay is " 'one of the most fundamental debtor protections provided by the bankruptcy laws. It gives the debtor a breathing spell from his creditors. It stops all collection efforts, all harassment, and all foreclosure actions.' " *Midlantic National Bank v. New Jersey Department of Environmental Protection*, 88 L. Ed. 2d 859 (1986) (quoting, S. Rep. No. 95-989, p. 54; H.R. Rep. No. 95-595, p. 340 (1977); U.S. Code Cong. & Admin. News 1978, pp. 5787, 5840, 5963, 6296). A court has the authority to grant stay relief for under § 362(d)(1) for "cause," and under § 362(d)(2) when the debtor does not have equity in the property and that property is necessary for an effective reorganization. As discussed below, this Court rules that relief from the automatic stay is warranted under both §§ 362(d)(1) and (2).

#### 1. 11 U.S.C. § 362(d)(1)

The Bankruptcy Code provides that the court shall grant relief from stay "for cause." 11 U.S.C. § 362(d)(1); *see also In re Wilson*, 116 F.3d 87, 90 (3d Cir. 1997). However, "[s]ection

362(d)(1) does not define "cause," leaving courts to consider what constitutes cause based on the totality of the circumstances in each particular case." *Id.* Thus, the decision to grant a party relief from the stay is made on a case-by-case basis. *Id.*

In this case, based on "the totality of the circumstances" the Court rules that MTGLQ has demonstrated "cause" to lift the automatic stay. Debtor's plan incorrectly assumes that he is able to modify MTGLQ's claim under 11 U.S.C. § 1322(b)(2). Without such a modification, the funding of the Debtor's plan is woefully inadequate to address MTGLQ's claim. Specifically, the Debtor's plan proposes monthly payments of only $800, which amounts to only $480,000 over the life of the plan **and is insufficient to satisfy MTGLQ's $873,669.18 claim.** Consequently, the Debtor's plan is neither feasible, nor confirmable. The Court finds "cause" to lift the stay under § 362(d)(1).

### 2. 11 U.S.C. § 362(d)(2)

"On request of a party in interest . . . the court shall grant relief from stay . . . with respect to a stay of an act against property . . . if—(A) the debtor does not have an equity in such property; and (B) such property is not necessary to an effective reorganization . . . ." 11 U.S.C. § 362(d)(2). A party seeking relief under § 362(d) bears the burden of proof on demonstrating the lack of equity in the property; the debtor bears the burden of proof on all other issues. *In re Johnson*, 196 F. App'x 112, 114 (3d Cir. 2006); *see also, e.g.*, *In re Kipps*, 645 B.R. 711, 723 (Bankr. M.D. Pa. 2022).

### i.    Equity

Here, MTGLQ prevails on the first prong as there is *no* equity in this Property. The Debtor even concedes there is no equity in this Property. *Supplemental Opposition to Debtor's Motion to Modify Claims and Object to Claims of MTGLQ* 2, ECF No. 38; *Debtor's Schedule D*, 10, 19, ECF

No. 1. Prior to filing this bankruptcy, a final judgment of foreclosure was entered in favor of MTGLQ and against the Debtor and his wife in the amount of $778,493.86. For argument's sake, even if this Court were to agree with MTGLQ's assertion that the Property is worth $575,800—which is the higher valuation—the Debtor has still no equity in this Property. On the opposite end of the spectrum, if this Court were to agree with the valuation proposed by the Debtor—that this Property is worth $380,000—the Debtor is left in the same position. Because neither proposed valuation exceeds the $778,493.86 judgment, there is no equity in the Property.

## ii. Effective reorganization

As for the second prong of § 362(d)(2), this Court must determine whether the Property is necessary for an effective reorganization. Here, it is uncontested that the Property does not serve as the Debtor's primary residence; rather, the Debtor concedes that the Property is used as a vacation property and occasional rental. There has been absolutely no showing that the Property is necessary for an effective reorganization. Given the lack of equity and Debtor's failure to demonstrate that the Property is necessary for an effective organization, stay relief under § 362(d)(2) is appropriate.

## III. Conclusion

For the reasons set forth above, the Court grants MTGLQ's Motion for Relief From Stay and denies Debtor's Motion to Modify Claims and Object to Claims of MTGLQ. The Court will enter Orders consistent with this Opinion.

*Michael B. Kaplan*
Michael B. Kaplan, Chief Judge
U.S. Bankruptcy Court
District of New Jersey

Cc:    Filed on CM/ECF